**JANOVE PLLC**
Raphael Janove (CA Bar No. 361193)
raphael@janove.law
500 7th Ave., 8th Fl.
New York, NY 10018
Tel: (646) 347-3940

Liana Roza Vitale (CA Bar No. 348772)
liana@janove.law
979 Osos St., Ste A5
San Luis Obispo, CA 93401
(805) 505-9550

*Attorneys for Plaintiffs and the Proposed Classes*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| **Richard Damas and Diane Varela,** on behalf of themselves and all others similarly situated, | Case No. 8:25-cv-2515 |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | |
| **Health-Ade LLC,** | 1. Violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq. |
| Defendant. | 2. Violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 et seq. |
| | 3. Violation of the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code. § 1750 et seq. |
| | 4. Violation of the New York General Business Law § 349. |
| | 5. Violation of the New York General Business Law § 350. |
| | **JURY TRIAL DEMANDED** |

The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d)(2) (*see* ¶¶ 13-14, *infra*.). It also has personal jurisdiction over Defendant Health-Ade LLC ("Defendant") because California is the jurisdiction where Defendant maintains its principal place of business, Defendant conducts substantial business in California, and California is where a substantial part of the acts and omissions that Plaintiffs complain of occurred.

Plaintiffs Richard Damas and Diane Varela, on behalf of themselves and others similarly situated, on knowledge as to their own actions, the investigation of Plaintiffs' counsel, and otherwise upon information and belief, allege claims against Defendant as follows:

## PRELIMINARY STATEMENT

1. This is a class action lawsuit against Health-Ade LLC, which sells prebiotic, "gut-healthy" soda ("Soda") on its website https://health-ade.com.

2. Prebiotics are ingredients in various high-fiber foods—such as bananas, asparagus, onions, and garlic—that consumers' bodies cannot fully digest. Instead, prebiotics serve as food for bacteria in the gut, helping the bacteria to grow and create a healthy microbiome in its host.[1]

3. Prebiotics are essential to maintaining good health, providing benefits such as a well-functioning immune system and a reduced risk of colorectal cancer.

4. Defendant claims that its Soda is a "gut-healthy" prebiotic soda because it includes agave inulin—a soluble fiber found in the agave plant.

5. According to the Soda's nutrition label, it only contains 3 grams of dietary

---

[1] Prebiotics are not the same as probiotics, although both may support gut health. Probiotics are specific living microorganisms, most often bacteria or yeast that help the body digest food or help with symptoms of certain illnesses. As noted, prebiotics are parts of food the body doesn't digest but that can be used by and trigger the growth of microorganisms that enhance gut health.

CLASS ACTION COMPLAINT

fibers. This means that, at most, the Soda contains 3 grams of agave inulin.

6.    Studies show, however, that inulin only begins to benefit consumers when they ingest 12 grams of it daily for at least one month.

7.    Thus, in order to reap the prebiotic benefits that Defendant promises, customers would have to drink at least four of Defendant's Sodas every day for one month.

8.    Since Defendant's Soda includes 5 grams of sugar per can, this means that consumers would also ingest an additional 20 grams of sugar every day.

9.    Studies show that maintaining a high-sugar diet negatively alters consumers' microbiome and can lead to metabolic disease, pre-diabetes, and weight gain.

10.    Thus, consuming enough of Defendant's Soda to try to reap the benefits of agave inulin would be futile because a user would simultaneously ingest enough sugar to negate those same benefits.

11.    As such, Defendant's Soda cannot provide the prebiotic benefits that it claims make the Soda "gut-healthy."

12.    Accordingly, Plaintiffs seek monetary and injunctive relief against Defendant for violating the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.;* California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*; the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*; and New York General Business Law ("GBL") §§ 349–50.

## JURISDICTION

13.    This Court has jurisdiction over this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. § 1332(d)(2), this Court has original jurisdiction because the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs, and at least one of the members of the proposed classes is a citizen of a different state than Defendant.

14.    This Court has personal jurisdiction over Defendant because Defendant's

principal place of business is in Los Angeles, California. Defendant conducts substantial business in this District, and a substantial part of the acts and omissions that Plaintiffs complain of occurred in this District.

## VENUE

15.    Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because Defendant resides in this District and is subject to this Court's personal jurisdiction and under (b)(2)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## PARTIES

16.    Plaintiff Diane Varela is an individual who resides in California and purchased Defendant's SunSip Soda. Plaintiff bought the Soda after seeing ads on social media[2] calling the Soda "gut-healthy." Plaintiff reasonably relied on Defendant's false advertisements and misleading information and would not have purchased the item or would have paid less for the item had she known about Defendant's deceptive practices.

17.    Plaintiff Richard Damas is an individual who resides in New York and purchased Defendant's SunSip Soda. Plaintiff bought the Soda after looking at Defendant's website and seeing claims that the Soda is "gut-healthy." Plaintiff reasonably relied on Defendant's false advertisements and misleading information and would not have purchased the item or would have paid less for the item had he known about Defendant's deceptive practices.

18.    Defendant Health-Ade LLC is a Delaware corporation that is headquartered in Los Angeles, California, and it is responsible for the false advertising and misleading statements that Plaintiffs reasonably relied on when they purchased SunSip Soda.

---

[2] For instance, Plaintiff Varela saw this ad multiple times before purchasing Defendant's Soda: https://www.facebook.com/ads/library/?id=1099823004907070

CLASS ACTION COMPLAINT

# FACTS

## I.    Defendant's Gut-Healthy Claims

19.    Health-Ade began as a kombucha stand at the Brentwood Farmer's Market in 2012.

20.    Since then, the company has grown exponentially, selling its products in 55,000 stores across the country and earning $300 million in sales.[3]

21.    Although Defendant started as a kombucha brand, it has expanded into the realm of "healthy soda," joining companies such as Olipop, Poppi, Culture Pop, and others.

22.    A primary selling point of this Soda is that it is "gut-healthy soda" because it includes prebiotics that supposedly nurture a healthy gut microbiome.

23.    As shown below, on its website, third-party retailer product pages, and in social media advertisements, Defendant claims that its Soda is "gut-healthy."

24.    First, Defendant's website repeatedly claims that its Soda is "gut-healthy":



---

[3] https://www.bevindustry.com/articles/95936-health-ade-brings-quality-kombucha-to-the-masses

CLASS ACTION COMPLAINT





CLASS ACTION COMPLAINT

1

2

3



4

5

6

7

8

9

10

11

12

13

14

15

16

17

18



19

20

21

22

23

24

25

26

27

28

25.     Even if customers do not purchase the Soda through Defendant's website,

7

Defendant ensures that major third-party retailers also repeat the refrain that the Soda is "gut-healthy soda."

26.    For example, Amazon describes the Soda as a "Gut-Healthy Beverage" on the Soda's product page:



27.    Walmart also describes the Soda as "gut-healthy soda":



CLASS ACTION COMPLAINT

28.     Lastly, to cover all of its bases, Defendant advertises its Soda on social media, consistently labeling it as "gut-healthy soda," alongside other references to gut health like "gut-healthy goodness" and "gut-healthy prebiotics":



[Space Intentionally Left Blank]

CLASS ACTION COMPLAINT



29.    Despite these repeated assertions of being a "gut-healthy soda," Defendant's Soda does not have a material impact on consumers' gut health or gut microbiome.

30.    With only 3 grams of dietary fiber per can, consumers would have to drink an unreasonable number of Defendant's Sodas to intake enough fiber to cause any positive changes to their gut health. Moreover, because each can contains 5 grams of sugar, any prebiotic benefits would be cancelled out by the inordinate amount of sugar that a consumer would ingest by drinking multiple Sodas.

## II.    Agave Inulin and Gut Health

31.    Prebiotics are components of specific foods that the body is unable to digest. Prebiotics serve as food for bacteria in the gut, helping the bacteria to grow and create a healthy microbiome in its host.[4]

32.    Good gut health has been linked to many health benefits, including a strong immune system and a reduced likelihood of developing colorectal cancer.[5]

33.    Prebiotics are most commonly found in high-fiber foods, such as bananas, asparagus, and whole-grain bread.[6]

34.    Defendant claims that its Soda is "gut-healthy soda" because it contains a prebiotic called agave inulin—a soluble dietary fiber naturally found in agave plants.

35.    A soda that contains prebiotics and claims to benefit consumers' gut-health may sound appealing, but the Soda cannot deliver on these promises.

36.    First, ingesting too much inulin can actually have adverse health effects. Studies have found that inulin can cause the gut to release bile acids, leading to intestinal inflammation and diarrhea.[7] Especially for people with irritable bowel syndrome, consuming too many prebiotics—such as inulin—can lead to gas, bloating, diarrhea, or constipation.[8]

37.    In some cases, the side effects of inulin can be even more serious. In a study conducted by Stanford Medicine, participants were given 30 grams of inulin every day for a week. For multiple people, the inulin caused a spike in certain enzymes, indicating

---

[4] https://www.health.harvard.edu/nutrition/prebiotics-understanding-their-role-in-gut-health#:~:text=Prebiotics%20are%20ingredients%20in%20certain,work%20in%20tandem%20with%20probiotics.

[5] *Id.*

[6] *Id.*

[7] https://news.cornell.edu/stories/2024/05/common-type-fiber-may-trigger-bowel-inflammation

[8] https://columbiasurgery.org/news/2017/02/09/what-you-need-know-about-prebiotics#:~:text=Prebiotics%20are%20certainly%20not%20appropriate,in%20patients%20who%20are%20sensitive.

damage to their livers.[9]

38.    Inulin can also provide positive benefits, especially for gut health, but only if consumers meet a certain threshold of grams ingested per day.

39.    A key benefit of inulin is that, when fermented by gut bacteria, it causes the body to produce short-chain fatty acids (SCFAs)—organisms in the gut that provide many health benefits, including maintaining immune homeostasis, glucose homeostasis, and intestinal barrier integrity.[10]

40.    A recent study shows, however, that SCFAs are not changed by small amount of agave inulin. Participants in this experiment were given doses of 5 grams and 7.5 grams of agave inulin every day for 3 weeks. Ultimately, the study concluded that agave inulin by itself did not create a scientifically significant positive change in participants' short-chain fatty acids.[11] As such, low levels of agave inulin cannot provide the key benefits associated with prebiotic intake.

41.    Another study found that inulin can impact very low-density lipoproteins (VLDLs) levels. High levels of VLDLs can lead to a buildup of plaque on the walls of arteries, ultimately contributing to cardiovascular disease.[12] This study finds that consuming inulin can lower VLDL levels. Importantly, though, to achieve this reduction, participants ingested 12 grams of inulin every day for a month.[13]

42.    These findings indicate that, although inulin may improve consumers' health under certain conditions, minimal consumption of this dietary fiber will not provide real benefits, like Defendant claims.

---

[9] https://med.stanford.edu/news/all-news/2022/04/fiber-supplements.html

[10] https://www.sciencedirect.com/science/article/pii/S0144861716303812 ;
https://www.mdpi.com/2072-6643/14/13/2559

[11] https://www.sciencedirect.com/science/article/pii/S0022316622088551#bib48

[12] https://www.mayoclinic.org/diseases-conditions/high-blood-cholesterol/expert-answers/vldl-cholesterol/faq-20058275#:~:text=Very%2Dlow%2Ddensity%20lipoprotein%2C,type%20of%20fat%20called%20triglycerides.

[13] https://pmc.ncbi.nlm.nih.gov/articles/PMC5622781/

CLASS ACTION COMPLAINT

43.    These studies confirm what many health professionals already know.

44.    Dr. Hannah Holscher, a professor at the University of Illinois Urbana-Champaign, says that "12 grams of inulin are generally needed to relieve constipation."[14]

45.    According to Dr. Holscher, "[p]rebiotic sodas aren't likely to harm your health…but it's also not likely that they'll be beneficial."[15] She noted, "'if people are concerned about their microbiome, they need to eat vegetables.'"[16]

46.    A registered dietitian at Hartford HealthCare, Emily Lewis, asserts that "there is little to no evidence to support the many health claims associated with [prebiotic sodas]."[17]

47.    Ultimately, a drink that contains a prebiotic supplement—like Defendant's Soda—is not effective at promoting gut health. The claim that it is "gut-healthy soda" is therefore misleading. There is no substitute for eating high-fiber foods, as "[a] diverse diet is the best way to consume prebiotics and support the growth of healthy bacteria. That means following established nutritional guidelines, avoiding ultra-processed food and artificial additives, and eating a variety of plants, including vegetables and grains like quinoa and rice."[18] And a supplement that contains more sugar than it does prebiotics is actively harmful to gut-health, as discussed below.

### III.    Defendant's Soda Cannot Provide Prebiotic Benefits

48.    Defendant contends that its Soda has "gut-healthy prebiotic fibers from agave inulin" that "nurture a happy gut."

49.    According to the Sodas' nutrition information, each can contains 3 grams of dietary fibers. This means that each can, at most, contains 3 grams of agave inulin.

50.    As shown above, studies have found that even when consumers ingested 7.5

---

[14] https://fshn.illinois.edu/news/are-prebiotic-sodas-good-gut-health

[15] *Id.*

[16] *Id.*

[17] https://hartfordhospital.org/about-hh/news-center/news-detail?articleId=52208&publicid=395

[18] https://www.cedars-sinai.org/blog/should-you-take-probiotics-and-prebiotics.html

grams of agave inulin every day for three weeks, they did not reap meaningful gut-related benefits. Consumers only started to see positive health effects when they had 12 grams of inulin daily for one month.

51.    To reach this 12-gram threshold and begin seeing health benefits, consumers would need to drink four of Defendant's Sodas every day for a month.

52.    However, each can of Defendant's Soda contains 5 grams of sugar. So, by drinking four of Defendant's Sodas, consumers would also be ingesting 20 grams of sugar every day for one month.

53.    Consuming sugar at this rate would not only counteract the potential prebiotic benefits of the Soda, but it would actually be detrimental to consumers' health.

54.    Many studies have examined the deleterious effects of sugar on gut health, including a recent study that found that "[h]igh sugar intake seems to stagger the balance of microbiota [in the gut]…to have increased pro-inflammatory properties, decreased immune-regulatory functions and decreased capacity to regulate epithelial [body tissue] integrity."[19]

55.    Another study conducted at Columbia University found that "dietary sugar alters the gut microbiome, setting off a chain of events that leads to metabolic disease, pre-diabetes, and weight gain."[20]

56.    As such, drinking enough of Defendant's Soda to gain any prebiotic benefit also inherently means ingesting enough sugar to negate those same benefits.

57.    Additionally, on average, Americans already maintain high-sugar diets.

58.    The Center for Disease Control (CDC) suggests that people over the age of two should consume no more than 12 teaspoons of added sugar daily (approximately 48

---

[19] https://pmc.ncbi.nlm.nih.gov/articles/PMC7284805/#B19-nutrients-12-01348 ; *See also* https://www.cghjournal.org/article/S1542-3565(21)01305-7/fulltext

[20] https://www.cuimc.columbia.edu/news/sugar-disrupts-microbiome-eliminates-protection-against-obesity-and-diabetes

CLASS ACTION COMPLAINT

grams of sugar).[21] However, overall, Americans consume 17 teaspoons of added sugar every day (approximately 68 grams of sugar).[22]

59.    This means that drinking any amount of Defendant's prebiotic Soda (each of which contain 5 grams of sugar) cannot counteract the negative effects of high-sugar diets that are already pervasive across America, and consuming four of Defendant's Soda (amounting to 20 additional grams of sugar) will only worsen the problem.

60.    Defendant does not specify the number of Sodas that a consumer would have to drink to intake enough prebiotics to benefit gut-health. In fact, Defendant intended for consumers to rely on the misrepresentations of its Soda's health benefits, as evidenced by the ubiquitousness of the phrase "gut-healthy" on its product pages and advertising.

61.    Most consumers do not have an advanced understanding of gut-health, making it unlikely that they would be able to discern an effective amount of prebiotics from an ineffective amount.

62.    Without reading lengthy and complex scientific studies, a reasonable consumer would not know the potential dangers of ingesting too much inulin, such as diarrhea, intestinal inflammation, or liver damage. Moreover, many would not understand how sugar interacts with the microbiome, upsetting the delicate balance of bacteria in the gut and negating any benefit gained by the small amount of agave inulin present in the Soda.

63.    Plaintiffs and Class Members reasonably relied on Defendant's "gut-healthy soda" representations and were harmed as a result.

## CLASS ALLEGATIONS

64.    Plaintiff Damas and Plaintiff Varela bring this action pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3), on behalf of themselves and the following proposed "Nationwide Class":

---

[21] https://www.cdc.gov/nutrition/php/data-research/added-sugars.html

[22] https://pmc.ncbi.nlm.nih.gov/articles/PMC9863459/

> All persons in the United States who purchased the Soda within the relevant limitations period, and/or such subclasses as the Court may deem appropriate.

65.    Plaintiff Varela also brings this action on behalf of herself and on behalf of the following proposed "California Class":

> All persons in California who purchased Soda within the relevant limitations period, and/or such subclasses as the Court may deem appropriate.

66.    Plaintiff Damas brings this action on behalf of himself and on behalf of the following proposed "New York Class":

> All individuals in New York who purchased Soda within the relevant limitations period, and/or such subclasses as the Court may deem appropriate.

67.    Excluded from the proposed Classes are Defendant and its employees, officers, directors, legal representatives, heirs, successors, subsidiaries, and affiliates, and the judicial officers and their immediate family members and associated court staff assigned to this case, as well as all persons who make a timely election to be excluded from the proposed class.

68.    Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence they would use to prove those elements in individual actions alleging the same claims.

69.    This action meets all applicable standards of Fed. R. Civ. P. 23 for class certification, in that Plaintiffs can demonstrate the elements delineated below.

70.    <u>Numerosity</u>. The members of the proposed Classes are so numerous and geographically dispersed that individual joinder of all proposed class members is impracticable. *See* Fed. R. Civ. P. 23(a)(1). While Plaintiffs believe that there are hundreds of thousands of members of the proposed Classes, the precise number of class members is unknown, but may be ascertained from Defendant's books and records.

71.    <u>Ascertainability</u>. The Classes are ascertainable because their members can

be readily identified using business records, and other information kept by Defendant in the usual course of business and within its control or Plaintiffs and the class members themselves. Plaintiffs anticipate providing appropriate notice to the Classes to be approved by the Court after class certification, or pursuant to court order.

72.    <u>Commonality and Predominance.</u> This action involves common questions of law and fact, which predominate over any questions affecting individual class members. *See* Fed. R. Civ. P. 23(a)(2) and (b)(3). These include, without limitation:

A.    Whether Defendant engaged in the conduct alleged in this Complaint;

B.    Whether Defendant violated the applicable statutes alleged herein;

C.    Whether Defendant's conduct emanated from the State of California;

D.    Whether Plaintiffs and the class members are injured and harmed directly by Defendant's conduct;

E.    Whether Plaintiffs and the class members are entitled to damages due to Defendant's conduct as alleged in this Complaint, and if so, in what amounts; and

F.    Whether Plaintiffs and the class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief as requested in this Complaint.

73.    <u>Typicality.</u> Plaintiffs' claims are typical of the putative class members' claims because, among other things, all such class members were comparably injured by Defendant's wrongful conduct as described above. *See* Fed. R. Civ. P. 23(a)(3). Defendant's creation and display of its misleading advertisements is uniform for all Plaintiffs and class members.

74.    <u>Adequacy.</u> Plaintiffs are adequate proposed class representatives because their interests do not conflict with the interests of the other members of the proposed Classes they seek to represent; because they have retained counsel competent and experienced in complex class action litigation; and because they intend to prosecute this action vigorously. The interests of the proposed Classes will be fairly and adequately

CLASS ACTION COMPLAINT

protected by Plaintiffs and their counsel. *See* Fed. R. Civ. P. 23(a)(4).

75. <u>Declaratory and Injunctive Relief</u>. Defendant has acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the proposed Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the proposed Classes as a whole. *See* Fed. R. Civ. P. 23(b)(2).

76. <u>Superiority</u>. A class is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and putative class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for members of the proposed Classes to individually seek redress for Defendant's wrongful conduct.

77. Applying the principles of equity or balance of equities, expecting an individual Plaintiff who is at a disadvantage with limited resources and spending capacity, and with minimal negotiating power, if any, to litigate claims against Defendant, a corporation that has significant resources and deep pockets, would be unfair. Class actions are a necessary and essential means to provide for public interest litigation with checks and balances to curtail deceptive practices by more powerful private corporations, including Defendant.

78. There is no special interest in class members individually controlling the prosecution of separate actions. And even if class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and it increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. *See* Fed. R. Civ. P. 23(b)(3).

**CALIFORNIA LAW APPLIES TO THE ENTIRE NATIONWIDE CLASS**

79. California's substantive laws apply to every class member, regardless of

where in the United States the class member resides.

80.     Defendant's Terms of Service, of which Plaintiffs did not have reasonably conspicuous notice, require that disputes are governed by California law. Thus, regardless of whether the Terms are binding on Plaintiffs, Defendant has evidenced a clear intent to subject itself to California law.

81.     California's substantive laws may be constitutionally applied to the claims of Plaintiffs and the Classes under the Due Process Clause, 14th Amend. §1, and the Full Faith and Credit Clause, Art. IV §1 of the U.S. Constitution. California has significant contacts, or a significant aggregation of contacts, to the claims asserted by Plaintiffs and all class members, thereby creating state interests that ensure that the choice of California state law is not arbitrary or unfair.

82.     Defendant's United States headquarters and principal place of business are located in California. On information and belief, Defendant also owns property and conducts substantial business in California. Therefore, California has an interest in regulating Defendant's conduct under its laws. Defendant's decision to reside in California and avail itself of California's laws, and to engage in the challenged conduct from and emanating out of California, renders the application of California law to the claims herein appropriate and constitutionally permissible.

83.     Upon information and belief, California is also the state from which Defendant's alleged misconduct and false statements emanated. This conduct similarly injured and affected Plaintiffs and all other class members.

84.     The application of California laws to the Classes is also appropriate under California's choice of law rules because California has significant contacts with Plaintiffs, and the claims of Plaintiffs and the proposed Classes. California also has a greater interest in applying its laws here than any other interested state.

### FIRST CLAIM FOR RELIEF

### Violation of California's Unfair Competition Law ("UCL")

### Cal. Business & Professional Code § 17200 et seq.

**(On behalf of Plaintiffs, the Nationwide Class, and the California Class)**

85.     Plaintiffs incorporate by reference all allegations in this Complaint and restate them as if fully set forth herein.

86.     California Business & Professions Code, sections 17200, *et seq.* (the "UCL") prohibits unfair competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising."

87.     Defendant's false and misleading advertising claims regarding the Soda violate all three prongs—unlawful, unfair, and fraudulent—of the UCL.

88.     First, Defendant's representations and omissions regarding the Soda are unlawful because they are misleading to a reasonable consumer and violate the CLRA, FAL, and NY GBL, as alleged herein.

89.     Second, Defendant's conduct violates the "unfair" prong of the UCL because Defendant's representations and omissions regarding the Soda's prebiotic benefits are illegal, immoral, unscrupulous, and substantially injurious to consumers, and the negative impact on consumers outweighs any reasons, justifications, or motives for Defendant's conduct.

90.     Third, Defendant's conduct violates the "fraudulent" prong of the UCL because Defendant's representations and omissions are likely to deceive members of the public.

91.     Plaintiffs reasonably relied on Defendant's representations and omissions. The representations and omissions were material because a reasonable consumer would consider the purported gut-health benefits of the Soda an important factor in deciding whether to purchase the product. The representations and omissions were a substantial factor in Plaintiffs' decision to purchase the Soda.

92.     As a direct and proximate result of Defendant's violations of the UCL, Plaintiffs, the Nationwide Class, and the California Class have suffered injury in fact and have lost money. Plaintiffs, the Nationwide Class, and the California Class paid an

1   unwarranted premium for the Soda and/or were denied the benefit of the bargain.

2       93.    Absent Defendant's misrepresentations and omissions, Plaintiffs would not

3   have purchased the Soda or would have paid substantially less for it.

4       94.    Plaintiffs seek relief for violations of the UCL in the form of restitution,

5   and/or disgorgement of ill-gotten gains to compensate and make whole Plaintiffs and the

6   Nationwide and California Classes. Restitution is appropriate because it is more certain,

7   prompt, and efficient as compared to damages. Further, to obtain a full refund as

8   damages, Plaintiffs would have to show that the products have no market value, whereas

9   that showing is not required for restitution.

10      95.    Plaintiffs also seek injunctive relief in the form of an order enjoining

11   Defendant from continuing to deceptively market the Soda. Injunctive relief is

12   appropriate because Defendant continues to deceptively market the Soda as being "gut-

13   healthy soda" and providing prebiotic benefits. Injunctive relief is necessary to prevent

14   Defendant from continuing to engage in the unlawful conduct and to prevent future harm

15   to Plaintiffs and the Nationwide and California classes which cannot be achieved through

16   available legal remedies.

17      96.    **Permanent public injunctive relief.** Plaintiffs also seek public injunctive

18   relief to protect the general public from Defendant's conduct.

19      97.    Defendant's false advertising is ongoing and will continue to harm the

20   public absent a permanent public injunction. Accordingly, Plaintiffs seek a permanent

21   injunction to enjoin Defendant from engaging in the misconduct alleged herein.

22                     **SECOND CLAIM FOR RELIEF**

23        **Violation of California's False Advertising Law ("FAL")**

24        **Cal. Business & Professional Code § 17500 *et seq*.**

25    **(On behalf of Plaintiffs, the Nationwide Class, and the California Class)**

26      98.    Plaintiffs incorporate by reference all allegations in this Complaint and

27   restate them as if fully set forth herein.

28      99.    The False Advertising Law, codified at Cal. Bus. & Prof. Code section

17500, *et seq.*, prohibits "unfair, deceptive, untrue or misleading advertising[.]"

100.  The FAL prohibits not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood, or tendency to deceive or confuse the public.

101.  Defendant violated section 17500 when it advertised and marketed the Soda through the unfair, deceptive, and misleading representations and omissions disseminated to the public that the Soda is "gut-healthy soda" and provides prebiotic benefits. In reality, one Soda contains too small a dosage of agave inulin to provide consumers with any material health benefit. Moreover, if consumers drank enough of the Soda to reap any prebiotic benefits, they would also ingest enough sugar to negate these same benefits. The Soda does not and cannot deliver the advertised benefits.

102.  Plaintiffs reasonably relied on Defendant's representations and omissions. The representations and omissions were material because a reasonable consumer would consider the purported gut-health benefits of the Soda an important factor in deciding whether to purchase the product. The representations and omissions were a substantial factor in Plaintiffs' decision to purchase the Soda.

103.  As a direct and proximate result of Defendant's violations of the FAL, Plaintiffs, the Nationwide Class, and the California Class have suffered injury in fact and have lost money. Plaintiffs and the Nationwide and California classes paid an unwarranted premium for the Soda and/or were denied the benefit of the bargain.

104.  Absent Defendant's misrepresentations and omissions, Plaintiffs would not have purchased the Soda or would have paid substantially less for it.

105.  Plaintiffs seek relief for violations of the FAL in the form of restitution, and/or disgorgement of ill-gotten gains to compensate and make whole Plaintiffs, the Nationwide Class, and the California Class. Restitution is appropriate because it is more certain, prompt, and efficient as compared to damages. Further, to obtain a full refund as damages, Plaintiffs would have to show that the products have no market value, whereas that showing is not required for restitution.

CLASS ACTION COMPLAINT

106.   Plaintiffs also seek injunctive relief in the form of an order enjoining Defendant from continuing to deceptively market the Soda. Injunctive relief is appropriate because Defendant continues to deceptively market the Soda as being "gut-healthy soda" and providing prebiotic benefits. Injunctive relief is necessary to prevent Defendant from continuing to engage in the unlawful conduct and to prevent future harm to Plaintiffs, the Nationwide Class, and the California Class which cannot be achieved through available legal remedies.

107.   **Permanent public injunctive relief.** Plaintiffs also seek public injunctive relief to protect the general public from Defendant's conduct.

108.   Defendant's false advertising is ongoing and will continue to harm the public absent a permanent public injunction. Accordingly, Plaintiffs seek a permanent injunction to enjoin Defendant from engaging in the misconduct alleged herein.

## THIRD CLAIM FOR RELIEF

**Violation of the California Consumers Legal Remedies Act ("CLRA") Cal. Civ. Code. § 1750 *et seq.***

**(On behalf of Plaintiffs, the Nationwide Class, and the California Class)**

109.   Plaintiffs incorporate by reference all allegations in this Complaint and restate them as if fully set forth here.

110.   Plaintiffs and the other class members are consumers within the meaning of Cal. Civ. Code § 1761(d) and have engaged in a transaction within the meaning of Cal. Civ. Code §§ 1761(e) and 1770.

111.   Defendant is a "person" within the meaning of Cal. Civ. Code §§ 1761(c) and 1770 and sells "goods or services" within the meaning of Cal. Civ. Code §§ 1761(b) and 1770.

112.   Defendant's Soda is a "good" or "service" within the meaning of Cal. Civ. Code. §§ 1761(a) and (b).

113.   Defendant has violated § 1770(a)(5) by representing that the Soda had characteristics it did not have.

114.    Defendant has violated § 1770(a)(7) by misrepresenting that the Soda is of a particular standard, quality, or grade.

115.    Defendant has violated § 1770(a)(9) by advertising the Soda with an intent not to sell it as advertised.

116.    Defendant's acts, practices, and omissions, set forth above, led customers to falsely believe that the Soda is "gut-healthy soda" and provides prebiotic benefits. In reality, the product does not and cannot deliver the advertised benefits.

117.    Plaintiffs reasonably relied on Defendant's representations and omissions. The representations and omissions were material because a reasonable consumer would consider the purported gut-health benefits of the Soda an important factor in deciding whether to purchase the product. The representations and omissions were a substantial factor in Plaintiffs' decision to purchase the product.

118.    Defendant's violations of the CLRA directly and proximately caused injury in fact and damages to Plaintiffs, the Nationwide Class, and the California Class. Absent Defendant's misrepresentations and omissions, Plaintiffs would not have purchased the Soda or would have paid substantially less for it.

119.    Plaintiffs seek relief for violations of the CLRA in the form of restitution, and/or disgorgement of ill-gotten gains to compensate and make whole Plaintiffs, the Nationwide Class, and the California Class. Restitution is appropriate because it is more certain, prompt, and efficient as compared to damages. Further, to obtain a full refund as damages, Plaintiffs would have to show that the products have no market value, whereas that showing is not required for restitution. Plaintiffs reserve the right to amend the Complaint to seek damages under the CLRA.

120.    **Permanent public injunctive relief.** Plaintiffs also seek public injunctive relief to protect the general public from Defendant's conduct.

121.    Defendant's false advertising is ongoing and will continue to harm the public absent a permanent public injunction. Accordingly, Plaintiffs seek a permanent injunction to enjoin Defendant from engaging in the misconduct alleged herein.

**FOURTH CLAIM FOR RELIEF**

**Violation of the New York General Business Law § 349**

**(By Plaintiff Damas, individually and on behalf of the New York Class)**

122.   Plaintiff Damas incorporates by reference all allegations in this Complaint and restate them as if fully set forth herein.

123.   In addition to claims under California law, Plaintiff Damas and the New York Class bring substantive claims under New York law.

124.   NY GBL § 349 declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state."

125.   NY GBL § 349 applies to Plaintiff Damas and the New York Class because the State of New York has a strong interest in protecting its residents from false advertising and deceptive business practices by companies marketing consumer goods within the state.

126.   Any person who has been injured by reason of any violation of NY GBL § 349 may bring an action in his or her own name to enjoin such unlawful acts or practices, an action to recover their actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not exceeding three times the actual damages, in addition to one thousand dollars per violation, if the court finds that the Defendant willfully or knowingly violated this section. The court may award reasonable attorneys' fees to a prevailing plaintiff.

127.   The practices employed by Defendant, by which it advertises and promotes the Soda, are materially misleading and deceptive within the meaning of NY GBL § 349. Defendant markets the Soda as being "gut-healthy soda" and providing prebiotic benefits.

128.   Defendant's acts and practices deceived Plaintiff Damas and the New York Class. Plaintiff Damas and the New York Class reasonably relied on these representations and believed they were purchasing a product that was "gut-healthy soda" and would provide prebiotic benefits. In truth, SunSip's Soda cannot provide the advertised benefits.

129.    Plaintiff Damas and the New York Class did not receive the benefit of their bargain. They paid a price premium for products falsely marketed as being a "gut-healthy soda" and having prebiotic benefits. The Soda is not capable of delivering on the promises Defendant makes.

130.    Defendant disseminated these false and misleading statements throughout New York, which were known, or should have been known through reasonable care, to be untrue and misleading to consumers, including Plaintiff Damas and the New York Class.

131.    Plaintiff Damas and the New York Class have been injured by Defendant's deceptive acts or practice, suffering an ascertainable loss by paying more for a product than they otherwise would have but for the false advertising.

132.    Plaintiff Damas and the New York Class have no adequate remedy at law.

133.    Defendant's conduct has caused and continues to cause immediate and irreparable injury to Plaintiff Damas and the New York Class and will continue to mislead consumers unless enjoined by this Court.

## FIFTH CLAIM FOR RELIEF

### Violation of the New York General Business Law § 350

### (By Plaintiff Damas, individually and on behalf of the New York Class)

134.    Plaintiff Damas incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

135.    In addition to claims under California law, Plaintiff Damas and the New York Class bring substantive claims under New York law.

136.    By reason of the acts set forth above, Defendant has been and is engaged in consumer-oriented advertising and marketing against Plaintiff Damas and class members located in New York, engaging in business conduct that is false and misleading in material respects, in violation of NY GBL § 350, which provides, in part, that "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

CLASS ACTION COMPLAINT

137.    Defendant caused statements that were untrue or misleading, and which they knew to be untrue or misleading, to be disseminated throughout New York State and elsewhere, through advertising, marketing, and other publications.

138.    Defendant's misrepresentations were material and substantially uniform in content, presentation, and impact upon consumers at large. Consumers were and continue to be exposed to Defendant's material misrepresentations.

139.    Plaintiff Damas and the New York Class have been injured by Defendant's deceptive acts or practices.

140.    Plaintiff Damas and the New York Class have no adequate remedy at law.

141.    Defendant's conduct has caused and is causing immediate and irreparable injury to Plaintiff Damas and the New York Class and will continue to damage both Plaintiff Damas and the New York Class and deceive the public unless enjoined by this Court.

142.    Pursuant to NY GBL § 350-e, Plaintiff Damas and the New York Class seek monetary damages (including actual damages or $500, whichever is greater, and minimum, punitive, or treble and/or statutory damages pursuant to NY GBL § 350-a(1)), injunctive relief, restitution, and disgorgement of all monies obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

143.    Defendant's conduct has also substantially injured the public, as consumers across New York were exposed to and relied upon Defendant's false advertising in deciding to purchase the Soda. By marketing the Soda as "gut-healthy soda" and providing prebiotic benefits, Defendant knowingly misled reasonable consumers into paying a premium for a product that cannot deliver the advertised benefits. The widespread deception not only caused financial harm to consumers but also promoted misleading narratives about natural supplements' ability to replace healthy, whole-food diets that are essential for maintaining a diverse microbiome and an overall healthy lifestyle.

144.    Defendant's conduct thus caused real-world harm and poses an ongoing risk

CLASS ACTION COMPLAINT

of further injury if not enjoined.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and the proposed Classes, pray for relief and judgment against Defendant as follows:

A.   Certifying the Classes pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiffs as representative of the Classes, and designating Plaintiffs' counsel as class counsel;

B.   Awarding Plaintiffs and the class members compensatory damages and actual damages in an amount exceeding $5,000,000, to be determined by proof;

C.   Awarding Plaintiffs and the class members appropriate relief, including actual and statutory damages;

D.   For declaratory and equitable relief, including restitution and disgorgement;

E.   For an order enjoining Defendant from continuing to engage in the wrongful acts and practices alleged here;

F.   Awarding Plaintiffs and the class members the costs of prosecuting this action, including expert witness fees;

G.   Awarding Plaintiffs and the class members reasonable attorneys' fees and costs as allowable by law;

H.   Awarding pre-judgment and post-judgment interest; and

I.   Granting any other relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury on all issues so triable.


Respectfully submitted,

JANOVE PLLC

Dated: November 10, 2025          By:   /s/ Raphael Janove
                                        Raphael Janove

CLASS ACTION COMPLAINT

500 7th Ave., 8th Fl.
New York, NY 10018
(646) 347-3940
raphael@janove.law

Liana Roza Vitale
979 Osos St., Ste. A5
San Luis Obispo, CA 93401
(805) 505-9550
liana@janove.law


*Attorneys for Plaintiffs and
the Proposed Classes*

CLASS ACTION COMPLAINT